## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**DIANA M.,**

    **Plaintiff,**

**vs.**                                    CIVIL ACTION NO. 3:24-CV-00648

**LELAND DUDEK,**
Acting Commissioner Of Social Security**,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, respectively. By Order entered November 14, 2024 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is the Plaintiff's Brief in Support of Complaint (ECF No. 12) and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision (ECF No. 13).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 12), **GRANT** the Commissioner's request to affirm the final decision (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her applications for DIB and SSI benefits on April 1, 2022 alleging disability beginning March 31, 2022 due to seizures, lower back pain, and bilateral numbness in her lower extremities. (Tr. at 17, 265) Her claims were denied initially and again upon reconsideration (Tr. at 17, 88-101, 103-111, 113-121). Thereafter, she filed a written request for hearing (Tr. at 145-165).

An administrative hearing was held on July 22, 2024 before the Honorable Gerard Langan, Administrative Law Judge ("ALJ"). (Tr. at 38-65) On August 8, 2024, the ALJ entered an unfavorable decision. (Tr. at 14-37) On August 30, 2024, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 224-225) The ALJ's decision became the final decision of the Commissioner on September 13, 2024 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On November 13, 2024, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 8) Subsequently, the Plaintiff filed her Brief (ECF No. 12), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 13), and finally, the Plaintiff filed her Reply Brief in Support of Complaint reiterating her arguments in support of remand (ECF No. 18). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 50 years old as of the alleged onset date, and "closely approaching

2

advanced age" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 88, 44) She has a high school education, and works part time at Walmart as a cashier. (Tr. at 46-48)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform

other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). These Sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information;

4

interact with others; concentrate, persist, or maintain pace; and adapt or manage
oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas
(understand, remember, or apply information; interact with others; concentrate,
persist, or maintain pace; and adapt or manage oneself), we will use the following
five-point scale: None, mild, moderate, marked, and extreme. The last point on the
scale represents a degree of limitation that is incompatible with the ability to do any
gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s),
the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the
impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the
claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the
medical findings about the severe impairment(s) and the rating and degree and functional
limitation to the criteria of the appropriate listed mental disorder to determine if the severe
impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2),
416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither
meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional
capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings
and conclusion reached in applying the technique must be documented at the ALJ and Appeals
Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written
decision must incorporate the pertinent findings and conclusions based on the
technique. The decision must show the significant history, including examination
and laboratory findings, and the functional limitations that were considered in
reaching a conclusion about the severity of the mental impairment(s). The decision
must include a specific finding as to the degree of limitation in each of the
functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found the Plaintiff met the insured status requirements through December 31, 2023. (Tr. at 19, Finding No. 1) Next, the ALJ determined that the Plaintiff did not engage in substantial gainful activity since March 31, 2022, her alleged onset date. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff suffered from the following severe impairments: seizures; degenerative disc disease of the lumbar spine; lumbar radiculopathy; and degenerative disc disease of the cervical spine, status post cervical fusion. (Tr. at 20, Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except:

> the claimant should avoid unprotected heights and industrial machinery. The claimant should avoid climbing ladders and scaffolds but can occasionally climb ramps and stairs. The claimant can tolerate occasional exposure to temperature extremes and vibration. The claimant should be afforded the ability to alternate between sitting and standing every 30 minutes.

(Tr. at 24, Finding No. 5)

At step four, the ALJ found that the Plaintiff is capable of performing her past relevant work as a cashier. (Tr. at 30, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since March 31, 2022 through the date of the decision. (Id., Finding No. 7)

## Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff objects to the ALJ's evaluation of the medical opinions of record, specifically

those provided by Keyana Collins, DNP, FNP-BC, PMHNP-BC, CCM and State Agency medical consultants, Rabah Boukhemis, M.D., and Uma Reddy, M.D., to the extent that the ALJ did not explain why their opinions were discredited in relation to supportability or consistency factors. (ECF No. 12 at 8-18) Additionally, the Plaintiff contends the ALJ failed to adequately consider the Plaintiff's subjective complaints, having cherrypicked, misstated and mischaracterized facts from the record to support his conclusion that the Plaintiff remains capable of light work. (Id. at 18-19) The Plaintiff argues the final decision is not supported by substantial evidence and asks the Court to remand this matter. (Id. at 19)

In response, the Commissioner contends that the ALJ's medical opinion analysis comports with the regulatory framework, and discussed the relevant evidence of record supporting why he found Ms. Collins' opinion not persuasive, Drs. Boukhemis' opinion generally persuasive, and Reddy's opinion persuasive, and explained his reasoning with citations to the record in accordance with the pertinent legal standards. (ECF No. 13 at 9-13) The Commissioner observes that an ALJ's RFC assessment is not beholden to any medical opinion, and may be based on the record as a whole; simply rejecting one opinion for another is not indicative that the ALJ formulated the RFC on his own lay opinion. (Id. at 13-14) The Commissioner also contends that the ALJ's analysis of the Plaintiff's subjective complaints is supported by substantial evidence, and did not overly focus on the Plaintiff's daily activities to discount her allegations of pain, but examined her statements against the record at large and appropriately determined she is not as limited as she alleges. (Id. at 15-17) The Commissioner argues the Plaintiff basically seeks a different decision from this Court, which is impermissible – the final decision should be affirmed. (Id. at 18)

In her reply brief, the Plaintiff reasserts her argument that this matter should be remanded

to allow the Commissioner to properly consider her symptoms and her treating medical source opinion evidence, all of which support a finding that she is unable to sustain work on a regular full-time basis. (ECF No. 18)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Summary of Relevant Medical Evidence:

The Plaintiff has a longstanding seizure disorder. She takes medications, including Tegretol and Keppra, with no changes to her medication or reported side effects during the relevant period (Tr. at 385-423, 487-585, 634-748). Records generally reflect that her last seizure was in March 2022 (Tr. at 385-403, 487-585, 586, 634-748; *but see* Tr. 480 (the Plaintiff stated her last seizure was November 2022 at the time of a cervical spine surgery; this is not otherwise reflected in her records)). At the time of her seizure in March 2022, she fell down three steps and went to the hospital; on follow up with her treating neurologist, she admitted not taking Keppra the night before (Tr. at 498). In February 2024, the Plaintiff's neurologist stated that she met the requirements for returning to driving, and she was advised to follow up with the state (Tr. at 726).

The Plaintiff's records also reflect a longstanding history of low to mid back pain, and a left hip injury with surgery, with ongoing mild left lower extremity weakness and mild left foot drop (Tr. at 417, 455, 520). Nerve testing in July 2021 was within normal limits (Tr. at 429, 491). A March 2022 MRI of the lumbar spine indicated degenerative changes and multi-level disc

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

bulging with neural foraminal stenosis, and spinal canal stenosis worst at L3-L4 where it was noted to be mild to moderate (Tr. at 444-445; *see also* Tr. at 755). An MRI of the thoracic spine showed small protrusions at the T6-T7 and T9-10 levels, and a syrinx of the thoracic cord (Tr. at 449). Aside from intermittent findings of mild left lower extremity weakness and foot drop, as well as some reduction in sensation to vibration and temperature, the Plaintiff's other lower extremity findings, including reflexes and right lower extremity strength, were normal (Tr. at 487-585). At a consultative evaluation in January 2023, the Plaintiff had a normal gait, full strength, normal reflexes, and negative straight leg raise (Tr. at 480-485).

As for the Plaintiff's cervical spine, imaging studies from early 2022 indicated degenerative disc space narrowing and a posterior disc bulge at the C5-C6 level (Tr. at 400, 448). A follow up MRI from summer 2022 showed up to moderate spinal stenosis, and moderate to severe right neural foraminal stenosis, at C5-C6, and less significant changes at C4-C5 (Tr. at 513, 576-577). Nerve testing indicated that the Plaintiff had a right-sided C6 radiculopathy, with chronic changes, as well as a mild right carpal tunnel syndrome (Tr. at 452, 526). On November 30, 2022, the Plaintiff underwent a discectomy and fusion of her lumbar spine at the C4-C5 and C5-C6 levels (Tr. at 459-478). A series of post-surgical x-rays indicated stable hardware (Tr. at 479, 532-535, 542-546, 582-585, 758, 767-769). At the time of her consultative evaluation in January 2023, the Plaintiff was still wearing a collar and unable to perform all testing but had normal grip strength and use of her upper extremities except for mild limits in bilateral shoulder range of motion (Tr. at 480-485). At follow up with her providers, the Plaintiff reported significant improvement in her upper extremity symptoms following her surgery, and denied motor weakness, sensory disturbance, bowel/bladder dysfunction, or difficulty with dexterity; examinations showed

9

no focal neurologic findings (Tr. at 561-562, 565-566, 578-579).

Medical Opinion Evidence:

On February 7, 2023, at the initial level of review, Rabah Boukhemis, M.D., State agency medical consultant, reviewed the record and found that the Plaintiff is capable of performing light work: she is able to lift/carry/pulling upwards 20 pounds occasionally and 10 pounds frequently; stand/walk/sit about six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; and should avoid concentrated exposure to extreme cold, vibration, and hazards such as machinery and heights (Tr. at 28-29, 91-92, 99-100).

On October 13, 2023, at the reconsideration level of review, after reviewing the record, Uma Reddy, M.D., also determined that the Plaintiff remains capable of light work, but found the Plaintiff should never climb ladders, ropes, or scaffolds and only occasionally balance, stoop, kneel and crouch; and also avoid concentrated exposure to extreme heat and avoid even moderate exposure to hazards due to the Plaintiff's history of seizures (Tr. at 29, 108-109, 118-119).

On July 11, 2024, Keyana Collins, DNP, FNP-BC, PMHNP-BC, CCM, reviewed the Plaintiff's medical records and determined that the Plaintiff was limited to standing/walking a combined 2 hours in an 8-hour workday and lifting/carrying no more than 10 pounds at a time (Tr. at 29, 780-782).

**The Administrative Hearing:**

Plaintiff's Testimony:

The Plaintiff testified that she is currently living with her sister (Tr. at 44). She explained that the long hours, swelling in her feet and legs, back pain, fatigue, and fear of having a seizure

at work prevents her from working full time (Tr. at 49). She explained she works part time because she needs the income (Tr at 49, 56). She stated her last seizure was in March 2022, which caused her to quit her full time employment with Walmart (Tr. at 49, 63). She described having issues with her neck, stating it "gets stuck sometimes", experiences pain and is unable to swallow, causing her to choke and throw up her food or drink; she stated there is "a spot in the middle" of her back "that dents in and [] had a little knot about it" that pops when she walks (Tr. at 50). She estimated she could sit for about 30 to 40 minutes before she needs to stand up because of her back pain (Id.). She estimated that she could stand for a "couple of hours" at one time; in response to a question as to how long she is able to walk, she testified that when she is a cashier, she is on her feet "four or six hours" and "I got to walk." (Tr. at 50, 51) She testified that she has a cane, although she only uses it when she needs it, to "take the pressure off my back." (Tr. at 51)

She testified that she can lift and carry about five to ten pounds comfortably and consistently. (Id.) She testified that as a cashier, she would have to lift up to 30 pounds, and that there are no special accommodations for her during her part time employment at Walmart so that she would not have to lift 30 pounds (Tr. at 52). Though she lifts less because she cannot lift (Tr. at 55).

She does not drive or cook, but does do laundry. (Id.) She explained she does not want to drive on account of her seizures, and that she is "not allowed" to cook because of her seizures. (Tr. at 53)

The Plaintiff testified that she has interrupted sleep because she needs to use the restroom during the night, and experiences "charley horses" in her legs, plus she has a rod in her ankle and it throbs, and she has back pain. (Tr. at 53-54) She does not take medication to help her sleep. (Tr.

at 54) When she is not working, she will take an hour or two hour nap. (Id.) The side effect she gets from her medications is rotten teeth, and she has had some removed, and she has had blood work done to check her liver. (Id.)

<u>Vocational Expert's Testimony:</u>

The vocational expert testified that the Plaintiff's past relevant work is identified as a "cashier II", which is classified as light and unskilled (Tr. at 59). In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the vocational expert testified that the individual could perform the Plaintiff's past relevant work as a cashier II, and that this position "is known to offer" the sit and stand option, although the Plaintiff's last vocation did not permit this (Tr. at 59-60). In response to questioning by the Plaintiff's representative, the vocational expert opined that her need for a cane for balance and ambulation would erode the job market base for a cashier II by 75%, but the remaining 25% would be afforded the sit/stand option, however, if the Plaintiff required the cane at all times while standing, this would eliminate the cashier II position (Tr. at 60-61). The vocational expert further opined that for light work, an individual would be required to stand and walk for a minimum of four hours, but anything less than four hours would be sedentary work, and if the hypothetical individual were limited to less than four hours, it would preclude her from performing the Plaintiff's past relevant work (Tr. at 61-62).

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Evaluation of Opinion Evidence:

The Plaintiff has argued that the ALJ failed to adequately explain why he discredited the opinions provided by Ms. Collins and the State agency medical consultants, contending that the ALJ's analysis fell short as to the supportability and consistency factors espoused under 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

As noted by the parties, the ALJ found Ms. Collins' opinion "not persuasive, as the degree of limitations are not entirely supported by Ms. Collins's own review of the record and is not consistent with the evidence, which generally reflects a normal gait and 5/5 motor strength in the upper and lower extremities. Moreover, it is inconsistent with the claimant's own testimony at the hearing, in which she reported that she is on her feet for approximately 4-6 hours at work." (Tr. at

29, 779-789)

Regarding Dr. Boukhemis' opinion, the ALJ found it to be "generally persuasive, as it is relatively supported by Dr. Boukhemis's own review of the record and is generally consistent with the treatment records and her ability to perform a fairly wide range of daily activities. However, considering the record as a whole, including additional evidence received at the hearing level, history of surgery, and diagnostic imaging, the undersigned finds the limitations found by Dr. Reddy on reconsideration more persuasive[.]." (Tr. at 28-29, 88-94) Regarding Dr. Reddy's opinion, the ALJ found it persuasive, noting that it generally supported "Dr. Reddy's own review of the record and is consistent with the medical evidence, which reflects reported improvement in [the Plaintiff's] upper extremity symptoms with surgery of the cervical spine, stability of her seizures with the last one reported to be in March 2022, and generally benign clinical findings on physical examinations that do note some decreased sensation in the lower extremities, but normal gait, normal deep tendon reflexes, and fully intact motor strength in the upper and lower extremities." (Tr. at 29, 103-111)

The undersigned notes that the ALJ explicitly applied the regulatory framework pursuant to Sections 404.1520c and 416.920c which pertain to claims filed after March 27, 2017. (Tr. at 27-28) Additionally, the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed.Appx. 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); Gilmore v. Kijakazi, 2022 WL 2869047, at *8 (M.D.N.C. Jul.

21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly matched Plaintiff's *testimony* or the *opinion* evidence."), *report and recommendation adopted*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022)(*emphasis* added).

A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §§ 404.1513(a)(5), 416.913(a)(5).

In this case, the ALJ properly applied Sections 404.1520c and 416.920c, which emphasize the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. §§ 404.1520c(a), 416.920c(a). (Tr. at 27-28) Instead of assigning weight to medical opinions, the ALJ just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how he considered the "the most important factors" of supportability and consistency. Id. §§ 404.1520c(c), 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation

to do so. Id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

As an initial matter, the ALJ observed that Ms. Collins is a "reviewing source", and rendered her opinion based on her review of the record. (Tr. at 29) While the Plaintiff complains the ALJ discounted Ms. Collins' opinion that the Plaintiff was limited to standing/walking a combined 2 hours in an 8-hour workday and lifting/carrying no more than 10 pounds at a time, because the ALJ found the record, and the Plaintiff's own testimony, was not consistent or supported by Ms. Collins' opinion, it is important to recognize that the ALJ was under no obligation to evaluate the opinion to this extent any further. As noted *supra*, Sections 404.1520c(a) and 416.920c(a) do not require an adjudicator to evaluate a medical opinion *at all*. Regardless, in the written decision, it is evident that the ALJ "considered" Ms. Collins' opinion pursuant to the pertinent regulations. The undersigned observes that Ms. Collins' opinion does not endorse a finding that the Plaintiff is disabled, nor does any other opinion of record endorse such a finding.

Regarding the State agency medical consultants' opinions, the undersigned observes that the ALJ in this case adopted their opinions to the extent that the Plaintiff is limited to light work, should avoid unprotected heights, industrial machinery, climbing ladders and scaffolds, could tolerate occasional exposure to temperature extremes and vibration (Tr. at 24, 28-29, *supra*). The ALJ therefore accounted for these limitations in the controlling RFC, which underscores that the RFC is not a product of his lay opinion, as postulated by the Plaintiff (see ECF No. 12 at 14).[2]

---

[2] The undersigned notes that the Plaintiff asserts that the ALJ's finding that Ms. Collins' opinion was not persuasive is erroneous to the extent that "the degree of limitations was not consistent with the evidence, which generally reflects a normal gait and 5/5 motor strength in the upper and lower extremities" is belied by a finding that she exhibited "4/5 left and quad and 3/5 left dorsiflexion strength but otherwise generally within normal limits[] (Exhibit B7F, p. 89)" (see Tr. at 574, 720). The undersigned **FINDS** this argument is without merit: the single citation referenced by the Plaintiff is from a treatment note dated September 22, 2022, whereas the medical record throughout the relevant period contains numerous physical examinations reporting that the Plaintiff's upper and lower extremities were rated at 5/5 motor strength, including records dated: March 29, 2022 (Tr. at 395); April 12, 2022 (Tr. at 499, 646); May 16, 2022 (Tr. at 667); May 23, 2022 (Tr. at 669); August 22, 2022 (Tr. at 663); December 9, 2022 (Tr. at 569, 715); January

The foregoing demonstrates that the ALJ did not engage in impermissible cherry-picking[3] when evaluating the evidence in assessing the Plaintiff's RFC – he acknowledged both negative and positive findings, reconciled the conflicting evidence of record, and ultimately restricted the Plaintiff to a light RFC with the aforementioned physical limitations that is based in large part on the opinion evidence from the State Agency medical consultants. To the extent the Plaintiff argues the ALJ should have addressed the opined limitations to further explain why he did not give the full credit, it must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's determination is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id. Indeed, it is also important that an ALJ's decision must be read as a whole in order to discern whether substantial evidence supports a finding. See Keene v. Berryhill, 732 Fed.Appx. 174, 177 (4th Cir. 2018) (finding the court "must read the ALJ's decision as a whole" and that findings in a step can support findings in other steps of the analysis).

---

20, 2023 (Tr. at 565, 711); February 21, 2023 (Tr. at 704); April 26, 2023 (Tr. at 708); August 22, 2023 (Tr. at 700); August 23, 2023 (Tr. at 554); December 1, 2023 (Tr. at 730); and February 19, 2024 (Tr. at 725). Significantly, the ALJ referenced the entirety of these exhibits in his determination earlier on in the written decision (Tr. at 23, 385-402, 486-585, 591-632, 633-748). The records even included a treatment note that predated the Plaintiff's alleged onset date, June 11, 2021, which also documented full strength "5/5 and symmetric" with a normal gait (Tr. at 488).

[3] See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (" 'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.' " (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

Moreover, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" <u>Reid v. Comm'r of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014) (quoting <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)); see also <u>Call v. Berryhill</u>, Civil Action No. 2:17-CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018). In this case, the ALJ stated that he considered all the evidence of record. (*See, e.g.*, Tr. at 18, 26 ("After careful consideration of all the evidence. . ."); Tr. at 19, 23 ("After careful consideration of the entire record. . ."). Having so stated, this Court should "take [him] at [his] word." <u>Reid</u>, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take [him] at [his] word."); see also <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); <u>Christina W. v. Saul</u>, No. 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019) ("Plaintiff further argues that the ALJ erred in not explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word."); see also, <u>Thomas v. Berryhill</u>, 916 F.3d 307, 312 (4th Cir. 2020).

In this case, the ALJ complied with the pertinent regulations and provided an adequate explanation for his evaluation of the opinion evidence. To the extent that the opinion was not corroborated by the evidence of record, the ALJ was under no obligation to include those restrictions in the hypothetical to the vocational expert. See <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th

Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4ᵗʰ Cir. Jan. 11, 1999) (unpublished table opinion) (stating that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations supported by substantial evidence in the record).

Accordingly, the undersigned **FINDS** the ALJ's evaluations of the medical opinions are supported by substantial evidence.

Evaluating Subjective Symptoms:

To the extent that the Plaintiff alleges the ALJ "improperly cherrypicked, misstated, and mischaracterized facts from the record . . . drew various conclusions unsupported by the substantial evidence and failed to explain them adequately" contrary to the holding in Arakas (ECF No. 12 at 19), the Court notes the following: SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529 and 416.929 require a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities.

<u>See</u>, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

<u>Id</u>. §§ 404.1529(c)(3), 416.929(c)(3).

As noted *supra*, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See <u>Manigo v. Colvin</u>, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." <u>Clark v. Comm'r of Soc. Sec.</u>, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." <u>Id</u>.

The Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See <u>Arakas v. Comm'r, Soc. Sec. Admin.</u>, 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." <u>Id</u>. It is important to recognize that in <u>Arakas</u>, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. <u>Id</u>. Another significant, if not critical, aspect of the <u>Arakas</u> holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. <u>Id</u>. For purposes herein, this Court must determine if the subject ALJ's analysis

relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In his discussion of the RFC, the ALJ recognized the Plaintiff alleged disability due to seizures, lower back pain, and numbness in her legs and feet. (Tr. at 24, 264-270)[4] The ALJ also noted that in subsequent disability reports, submitted on February 23, 2023 and November 29, 2023, the Plaintiff reported "a gradual worsening in the severity in her conditions with greater limitations, but did not elaborate further." (Tr. at 24, 329-335, 345-350) From her Function Reports and hearing testimony, the ALJ summarized as follows:

> The claimant alleges that her impairments affect her sleep, memory, and ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, and get along with others. As for her seizures, she reports that they are unpredictable and they are caused by stress, working, and her commute to and from work. At the hearing, the claimant testified that she is unable to work full-time because the hours are too long, she has lower extremity swelling and back pain, she is tired all the time, and she is afraid she will have a seizure. As for her neck issues, she testified that it sometimes gets stuck, she experiences pain and sometimes swelling, and difficulty swallowing. As for her back issues, she testified that she experiences lower back pain, popping when she walks, and she is unable to move. She also testified that she could sit for only approximately 30-40 minutes before she has to stand due to back pain, she could stand for a couple of hours at a time, and that she walks her dog and is always on her feet for approximately 4-6 hours while working as a cashier. She also testified that she has a cane, but that she does not use it at all times. She also testified that she could and carry only approximately 10 pounds. She also testified that she is not allowed to drive and she does not cook because of her seizures.

(Tr. at 24-25, 283-293, 294-299, 311-321)[5] From the foregoing, after properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms,

---

[4] The ALJ cited the Plaintiff's disability report, dated May 9, 2022, in connection with her applications for benefits.

[5] The ALJ referenced the Plaintiff's Function Reports, submitted on June 1, 2022 and September 28, 2022 and her Seizure Questionnaire, submitted June 1, 2022.

and found that they "are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. at 25) The ALJ ultimately determined the evidence of record did not support greater limitations than provided by the RFC as related to the Plaintiff's alleged "physical functional limitations." (Id.) In support of this finding, the ALJ made several notable observations:

Regarding the Plaintiff's cervical spine, pre-onset date imaging studies showed degenerative changes at C5-C6; a subsequent CT scan, an MRI and nerve conduction studies from March 2022 through September 2022, showed a bulging disc at C5-C6, degenerative changes at C4-C5 and C5-C6 with moderate spinal stenosis to severe right neural foraminal stenosis at C5-C6, and C6 myotome radiculopathy on the right with chronic denervation changes only and medial mononeuropathy at the level of the wrist on the right, graded as mild in severity (Tr. at 25, 448, 400, 513, 452). The ALJ acknowledged the Plaintiff underwent a cervical spine fusion on November 30, 2022 (Tr. at 25, 469-471), and then in January 2023, post-surgical imaging showed the Plaintiff had no hardware complication or gross worsening of her underlying spondylosis (Tr. at 25, 479). The ALJ noted that additional imaging from April 2023 through December 2023 again showed no hardware complications and that the Plaintiff's cervical fusion was stable (Tr. at 25, 532-535, 582-585, 741-744). Significantly, the ALJ noted that the medical records following the Plaintiff's surgery "generally reflect reports that she was doing well, endorsed significant improvement in her upper extremity symptoms, and was overall happy with the outcome of surgery." (Tr. at 25, 561, 565, 569, 578)

Regarding the Plaintiff's lower extremities, the ALJ considered to a pre-onset date EMG from July 2021 that indicated within normal limits (Tr. at 25, 491), although a subsequent MRI of the Plaintiff's lumbar spine in March 2022 showed multilevel degenerative changes (Tr. at 25,

444-445), and an MRI of her thoracic spine in May 2022 showed small disc protrusions as well as a thoracic cord syrinx (Tr. at 25, 449). Imaging from April 2023 again showed multilevel degenerative changes to the Plaintiff's lumbar spine (Tr. at 25, 755). The ALJ also noted the Plaintiff presented with 4/5 left lower extremity strength with mild foot drop on examination in May 2022, but it was otherwise within normal limits, including 5/5 strength in bilateral upper extremities and the right lower extremity (Tr. at 26, 520). Again, significantly, the ALJ noted that post-surgical neurological examinations from December 2022 through August 2023 were generally within normal limits (Tr. at 26, 561-562, 565, 569, 578).

Regarding the Plaintiff's seizures, the ALJ observed that although the Plaintiff testified that her last seizure was in March 2022, which is supported by the record, the Plaintiff reported during the consultative examination that her last seizure was in November 2022 (Tr. at 26, 385-402, 480); the Plaintiff also denied additional seizures since March 2022 and that she admitted in April 2022 that she missed her evening medication right before her March 2022 seizure (Tr. at 26, 486-585, 633-748). The ALJ observed the record indicated the Plaintiff's seizure medication was not changed during the relevant period and she reported no medication issues or side effects (Tr. at 26, 403-423, 486-585, 633-748). Of further interest here, as it concerns the RFC assessment, supra, the ALJ noted that the Plaintiff's neurological examinations from April 2022 through August 2023 showed "decreased temperature and vibration sensation in the bilateral lower extremities, worse on the left than right, according to the claimant, but were otherwise within normal limits" (Tr. at 26, 486-585, 633-748); the most recent examination in February 2024 noted intact sensation to vibration and pinprick (Tr. at 26, 725). The ALJ also noted that although the Plaintiff testified that she is unable to drive due to her seizures, during the February 2024

examination, the Plaintiff reported wanting to return to driving, and her neurologist advised her that she met requirements to return to driving (Tr. at 27, 726). The ALJ acknowledged the Plaintiff testified she is unable to cook due to her seizures, but also reported in her applications for benefits that she could prepare simple meals and advised the consultative examiner that she cooks (Tr. at 27, 283-293, 311-321, 480-485). Additionally, the ALJ recognized that the Plaintiff's prior period of disability ended because she experienced improvement in her seizures and the last seizure was in 2012 (Tr. at 27, 72). Finally, the ALJ noted that from emergency treatment records stemming from her March 2022 seizure, the Plaintiff reported being stressed at work and would like to go back on disability, but she had to start working again once her seizures were under better control, "but that malingering could not be ruled out because of this." (Tr. at 27, 394)

In further support of his subjective complaints analysis, as well as the RFC assessment, the ALJ observed that the Plaintiff's neck and seizure issues were overall stable and improved with medication and surgery, and that she performed a wide range of daily activities, including working part-time, caring for her pets and walking her dog, washing laundry, some other household chores, and shopping. (Tr. at 27, 283-293, 311-321)

The aforementioned demonstrates that the ALJ did not cherrypick only the evidence from the record to support a finding of nondisability; moreover, the ALJ's analysis demonstrates that he did not improperly increase the Plaintiff's burden of proof that has been long considered verboten under Fourth Circuit jurisprudence. There is no dispute that the Plaintiff is entitled to rely upon on her subjective complaints exclusively to prove her symptoms prevent her from working, however, this does not mean that the ALJ must accept her statements to the exclusion of the objective or other evidence of record – especially when there are inconsistencies within the overall record of

evidence. See 20 C.F.R. §§ 404.1529(4), 416.929(4). The ALJ is obligated to consider the Plaintiff's alleged functional limitations that "can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. Accordingly, the undersigned **FINDS** that the ALJ's symptom analysis comports with this Circuit's jurisprudence, and is supported by substantial evidence.

Finally, the undersigned **FINDS** the Commissioner's final decision is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's request for remand (ECF No. 12), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the docket of this Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 5, 2025.



Omar J. Aboulhosn
United States Magistrate Judge